# United States Court of Appeals
# for the Fifth Circuit

————————

No. 25-50630

————————

Estate of Jeremy Bellamy, *deceased*, through its independent executor Jackie Bellamy,

*Plaintiff—Appellant*,

*versus*

Ford Motor Company,

*Defendant—Appellee*.

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2026

Lyle W. Cayce
Clerk

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:22-CV-941

———————————————————————

Before Willett, Engelhardt, and Douglas, *Circuit Judges*.

Per Curiam:[*]

This case arises from an incident in which Plaintiff-Appellant Police Officer Jeremy Bellamy was found unconscious in his patrol vehicle while on duty. Bellamy was taken to the hospital where he was diagnosed with carbon monoxide poisoning and pneumonia. Bellamy then filed suit against the manufacturer of his patrol car, Defendant-Appellee Ford Motor Company

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-50630

("Ford"). Bellamy alleged negligence in the design, manufacturing, and marketing of his patrol car, as well as strict liability for its alleged design and manufacture defects. These defects, Bellamy claims, led to his carbon monoxide poisoning, causing him permanent injury. Bellamy's case proceeded to trial in the United States District Court for the Western District of Texas where the jury returned a verdict for Ford. Following the return of the jury verdict, Bellamy filed a motion for a new trial, claiming that, due to a purported clerical error, a "prejudicial" exhibit was erroneously admitted into evidence and improperly influenced the jury's verdict. The district court denied Bellamy's motion for a new trial, finding that there was no reasonable possibility that the jury's verdict was influenced by any extrinsic material. For the following reasons, we AFFIRM the order of the district court.

I

While on duty on March 22, 2021, Officer Bellamy sat in his police-issued cruiser, a Ford Interceptor, with the engine idling. He sat in his cruiser at a "usual" intersection where he watched for speeding drivers. A passerby discovered Bellamy unconscious in his vehicle and promptly called 911. Bellamy recalled gaining consciousness when emergency vehicles arrived at his car. He was taken to the hospital where doctors discovered Bellamy had well over the normal range of carbon monoxide in his blood.[1] On March 26, Bellamy was discharged from the hospital. Following a lengthy exchange of discovery, the case proceeded to trial on April 7, 2025, nearly four years later. After the close of arguments, both parties signed off on the final list of exhibits that were to be entered into evidence for the jury to

---

[1] The typical range of carbon monoxide in humans is about 0.05 to 1%; Bellamy's levels were recorded at 7.8%.

consider. Both Ford and Bellamy missed that one exhibit, Defense Exhibit 66 ("D66"), was marked as a substantive exhibit rather than a demonstrative. Prepared by Ford, D66 was a summary chart of carbon monoxide testing done on Bellamy's police cruiser. As a result, the exhibit was erroneously given to the jury to consider as substantive evidence. Following the return of the jury's verdict for Ford, Bellamy caught the error and filed a motion for a new trial under Federal Rule of Civil Procedure 59(a). Unfortunately, just after the motion was fully briefed, Bellamy passed away. His wife was appointed as his personal representative and proceeded through his estate. The district court then denied Bellamy's motion for a new trial and he timely filed his notice of appeal.

## II

We review a district court's grant or denial of a new trial for abuse of discretion. *United States v. Hoffman*, 901 F.3d 523, 552 (5th Cir. 2018). Generally, a district court abuses its discretion by denying a new trial "only when there is an absolute absence of evidence to support the jury's verdict." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 472 (5th Cir. 2015) (citation modified).

## III

The exhibit that Bellamy claims qualifies as extrinsic evidence is, as stated above, a summary chart prepared by Ford that includes all carbon monoxide testing completed on Bellamy's police cruiser. Bellamy is correct that the district court sustained his objections to its admission to evidence, but he neglects to meaningfully interact with the undisputed fact that the chart was permitted by the district court to be displayed to the jury at three separate times throughout trial. Ford and Bellamy have differing characterizations of D66, as discussed below, but these two critical and

undisputed facts make Bellamy's ability to overcome the abuse of discretion standard impossible.

Bellamy contends that the exhibit contained "highly prejudicial" information the court had "expressly excluded." Bellamy argues that because the exhibit referenced testing conducted by one of Ford's experts, who did not testify at trial, the chart included extrinsic evidence and that it was therefore presumptively prejudicial. Bellamy also argues that the layout of the chart was prejudicial by emphasizing the testing done by Ford and minimizing the tests completed by Bellamy. Bellamy argues that the information from the non-testifying witness constitutes hearsay, other "extrinsic" evidence, and mischaracterized tests. These issues, Bellamy argues, make the exhibit highly prejudicial, and its inadvertent submission to the jury therefore warrants a new trial.

Ford counters that D66 was not extrinsic evidence and challenges Bellamy's contention that the jury's consideration of it was "presumptively prejudicial." Ford argues that our court has never applied a presumption of prejudice in civil cases. In fact, Ford argues, Bellamy is unable to find support for his argument anywhere in our circuit. Ford also challenges the characterization of D66 as extrinsic evidence. Although the exhibit was kept out of substantive evidence, it was properly shown to the jury as an illustrative aid, without objection.[2] Ford defines extrinsic evidence as evidence that is entirely outside of what had been demonstrated at trial. All of this, Ford concludes, indicates that the district court did not abuse its discretion in denying Bellamy's motion for a new trial.

_____

[2] Ford is correct that Bellamy did not object to the court's publication of the exhibit as a demonstrative, but he did object to the contents of D66 on three occasions.

In *United States v. Ruggiero* our court affirmed the district court's denial of a motion for a new trial, despite the introduction of extrinsic evidence to the jury. 56 F.3d 647, 656 (5th Cir. 1995). In that case, one of the jurors received information from a coworker about one of the defendant's prior acts of stealing from his employer "for his private benefit." *Id.* at 651. Ruggiero was on trial for wire fraud and was convicted on all counts. *Id.* at 649. In *Ruggiero*, a criminal case from 1995, our court still applied the presumption of prejudice. *Id.* at 652 ("This rule creates a rebuttable presumption of prejudice to the defendant, and the government has the burden of proving the harmlessness of the breach." (citation modified)). However, in that case, even when applying the presumption of prejudice, we held that the extrinsic evidence did not improperly influence the jury. *See id.* at 653 ("[Juror]'s statements regarding the extrinsic evidence support the district court's decision, and the content of the statements heard by [juror] does not undermine the district court's conclusion."). Bellamy's attempt to apply *Ruggiero*'s presumption of prejudice misunderstands its holding.

Additionally, the extrinsic evidence in *Ruggiero* was truly extrinsic, meaning that a juror had been exposed to evidence never before discussed during the criminal trial. *See United States v. Mix*, 791 F.3d 603, 610 (5th Cir. 2015) ("A juror's reference to non-record evidence that directly pertains to the particular case being considered is by definition an injection of extrinsic information, even if it is fabricated."); *see also Oliver v. Quarterman*, 541 F.3d 329, 336 (5th Cir. 2008) ("A juror is exposed to an external influence when the juror reads information not admitted into evidence, such as a newspaper article about the case, or hears prejudicial statements from others."). The juror who received the information testified that she observed one of the witness's names in her coworker's rolodex and asked him his opinion of the witness. *Ruggiero*, 56 F.3d at 651. She then asked questions about the defendant, but then realized she "should not ask any more questions and she

5

'let the matter drop.'" *Id.* Later that day, the juror's coworker then supplied the juror with his own personal knowledge of one of the defendants. *Id.* That situation is a far cry from the mishap in this case. The chart that was inadvertently sent to the jury was introduced to the jury on multiple occasions.

In *United States v. Mix* our court affirmed the district court's grant of a new trial in favor of criminal defendant Kurt Mix, a BP engineer involved in the BP oil spill. 791 F.3d at 606. In that case, the jury foreperson overheard in a courthouse elevator that other BP employees were being prosecuted. *Id.* Mix's counsel learned the foreperson "announced that she had overheard extrinsic information in the courthouse elevator, and this information gave her comfort in voting guilty." *Id.* at 607. The government argued that the information the juror heard was merely cumulative, arguing that there had been at least three references to other cases related to the oil spill. *Id* at 610. However, our court agreed with the district court and found that none of the other instances "indicate[d] that the jury heard that the government was actively prosecuting other defendants and bringing them to trial." *Id.* at 611. Again, the facts in *Mix* differ greatly from those in the instant case, and Bellamy fails to show that the inadvertent disclosure here is truly considered extrinsic. He is additionally unable to show how the exhibit prejudiced him; unlike *Mix*, the record does not reveal specific juror testimony that concludes the verdict was improperly influenced by D66. The information in D66 actually was discussed by the parties, in the presence of the jury, on multiple occasions. What's more, the jury foreperson in *Mix* revealed to Mix's counsel that she, in direct reliance on the information, was given "comfort" in reaching a guilty verdict, a fact conspicuously absent from the instant case. *Id.* at 607. It is also important to underscore that *Mix* was a criminal case.

No. 25-50630

Even if Bellamy were able to overcome the holdings of above-mentioned cases, he is still unable to show that D66's admission was harmful. First, substantial evidence supported the jury's verdict; Ford presented cumulative admissible evidence that demonstrated there was no defect found on Bellamy's vehicle. What's more, "[i]t is well settled that the improper admission of evidence that is merely cumulative on matters shown by other admissible evidence is harmless error." *Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036, 1040 (5th Cir. 1984). Together, the strength of the properly admitted evidence and the cumulative nature of D66 make clear that its admission did not affect Bellamy's substantial rights or the jury's verdict.

Finally, Bellamy failed to raise his argument that Ford attempted to use hearsay found in D66 in his Rule 59(a) motion, and that argument is therefore reviewed for clear error. *See In Re Deepwater Horizon*, 824 F.3d 571, 582–83 (5th Cir. 2016) (per curiam). However, we note that even if our court were to consider this argument, it too would fail, as the district court appropriately concluded at trial that the aspect of the chart that Bellamy contends is hearsay, namely the portion of the chart including the testing completed by the Northside Ford dealership, was admissible (as a demonstrative) as a properly authenticated business record. The district court therefore did not abuse its discretion in concluding that this portion of D66 was adequately authenticated and not hearsay.

IV

For the aforementioned reasons, the order of the district court is AFFIRMED.

7